UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| LUNDY L. SPARKS,<br> Plaintiff,<br><br>V.<br><br>FIFTH THIRD MORTGAGE COMPANY,<br> Defendant. | CIVIL ACTION NO. 5:17-450-KKC<br><br>**OPINION AND ORDER** |

This matter is before the Court on the Defendant's motion for judgment on the pleadings. (DE 16). For the following reasons, the motion is **GRANTED**.

## I. INTRODUCTION

This dispute arises out of a construction project gone awry. In 2006, Lundy Sparks contracted with B.A. Parker Custom Homes, LLC, to build a residence. Sparks simultaneously contracted with Fifth Third Bank to provide him a $671,920.00 construction loan for the property. (DE 1-1 at 4). In the loan contract, Sparks authorized Fifth Third to disburse payments directly to Parker without Sparks first inspecting his new residence to ensure construction had progressed and the funds had been earned. *Id.* at 5. As the construction project continued, however, Parker failed to make or withheld payments to independent contractors, who filed liens being filed against the property. Sparks eventually settled those liens in state court at an expense of roughly $200,000.00. *Id.* at 6.

Here, Sparks seeks damages from Fifth Third for its alleged breach of contract. *Id.* at 7. Sparks alleges that Fifth Third was contractually obligated to ensure the subcontractors had been paid prior to disbursing funds to Parker, and that Sparks should be compensated for his costs in resolving the liens. *Id.* at 7–8. Additionally, Sparks seeks indemnity from Fifth Third for the amount he has paid to resolve liens and in an amount equal to his attorneys fees and costs incurred. *Id.* at 8–9.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Sixth Circuit imposes the same pleading requirements on a party who files a Rule 12(c) motion for judgment on the pleadings as it does on a party who files a motion to dismiss pursuant to Rule 12(b)(6). *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

Under Rule 12(b)(6), the Court must dismiss a complaint that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, a plaintiff must plead such facts so as to allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). The Court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Id.* at 678 (citing *Twombly*, 550 U.S. at 570); s*ee also City of Ann Arbor*, 675 F.3d at 611 ("[T]he court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle relief."); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).

In that review, the Court looks at all the pleadings filed in the case. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *Rondigo LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). When resolving a motion to dismiss, then, a

district court is limited to matters formally contained in the pleadings. However, "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (quoting *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)); *see also Rondigo, L.L.C.*, 641 F.3d at 681 (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) (A court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.").

## III. ANALYSIS

### A. Breach of Contract

Sparks alleges that Fifth Third breached the loan contract by failing to make certain that each subcontractor had been paid prior to approving Parker's draw requests. (DE 1 at 7 ¶ 23). Specifically, Sparks claims (1) that the duty of good faith and fair dealing required Fifth Third to ensure that no liens were placed on Sparks' property prior to disbursing funds to Parker, (DE 23 at 1); (2) that Fifth Third breached the express terms of the loan contract by failing to withhold 10% of the loan proceeds for the final draw, *id.* at 2; and (3) that a confidential relationship between Fifth Third and Sparks created a fiduciary duty between Fifth Third and Sparks, which required Fifth Third to ensure Sparks' residence was being built properly without the attachment of liens, *id.*

Resolution of all these claims hinges on the plain language of the contract between Sparks and Fifth Third. The interpretation of a contract is a question of law for the Court. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002) (citing *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App.

3

2000)). In interpreting a contract, the Court's purpose "is to effectuate the intentions of the parties" in drafting the agreement. *Id.* In so doing, the Court relies on the plain language of the contract. "Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Id.* at 385 (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)). "The fact that one party may have intended different results [] is insufficient to construe a contract at variance with its plain and unambiguous terms." *Id.* (citing *Green v. McGrath*, 662 F. Supp. 337, 342 (E.D. Ky. 1986)). Here, the plain language of the contract between Sparks and Fifth Third could not be clearer, and Sparks has failed to articulate any plausible ground for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### i. Duty of Good Faith and Fair Dealing

Sparks's first claim is that Fifth Third had a duty of good faith and fair dealing to ensure that no liens were being placed on Sparks' property prior to disbursing funds to Parker. (DE 23 at 1). The plain language of the contract, however, reveals that this was not the case. Section 3.B.ii. of the loan contract provides "[a]t the Lender's *discretion*, a copy of all subcontractor statements and/or labor and materialmen invoices *may* be required to be attached to each draw request." (DE 1-1 at 11 (emphasis added)). Section 5 provides that any inspection of the property to determine the progress of construction and/or the presence of liens "are *solely* for the benefit of the Lender and Borrower may not rely on Lender's inspections *for any purpose*." *Id.* at 12 (emphasis added). Section 5 further crucially provides:

> If the Borrower has any concern relating to the construction of the Project, *Borrower* should take any and all actions to satisfy and/or resolve Borrower's concerns, including but not limited to performing *Borrower's own inspection* or hiring an expert to perform an inspection (or inspections) for the Borrower. Borrower should *never* authorize Lender to disburse Loan Proceeds to *any* contractor until Borrower is *completely satisfied* with the work of such

4

> contractor. *Borrower is responsible for all obligations relating to lien rights*, including but not limited to contractor, subcontractor, and/or materialmen's liens. *Lender assumes no responsibility or liability* for Borrower's potential inspection and lien rights, obligation, or liabilities.

*Id.* (emphasis added). Despite the above, Sparks authorized Fifth Third "to make all disbursements directly to the party(ies) identified in the draw requests. . . . [T]he disbursement check will be made payable to and sent directly to the contractor." *Id.* at 16.

Fifth Third, as a bank, has a duty to ensure the loan proceeds are provided in accordance with the terms of the loan contract. Fifth Third, however, is not an insurer, and the plain language of the contract reveals that Fifth Third adhered to its contractual duties in this case. "Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002). Here, Fifth Third had no duty to Sparks to prevent the filing of liens against Sparks' property. Indeed, the plain language of the contract provides the opposite. (DE 1-1 at 12 ("Borrower is responsible for all obligations relating to lien rights, including but not limited to contractor, subcontractor, and/or materialmen's liens. Lender assumes no responsibility or liability for Borrower's potential inspection and lien rights, obligation, or liabilities.")). As such, Fifth Third complied with its contractual duties in this case.

### ii. Express Terms for the Final Draw

Sparks' second and third arguments in favor of Fifth Third's breach of contract are that Fifth Third breached the express terms of the loan contract by failing to withhold 10% of the loan proceeds for the final draw, and that a confidential relationship between Fifth Third and Sparks created a fiduciary duty to ensure Sparks' residence was being built properly without the attachment of liens. (DE 23 at 2). First, there is no requirement to be found in the loan contract that supports Sparks' allegation that Fifth Third was required to

withhold 10% of the loan proceeds for the final draw. (*See* DE 1-1 at 11–12 § 3.B.iii.D., 16 Ex. A). Because there is no language establishing such a requirement, Sparks relies on conversations with Charlene Brandenburg, an employee of Fifth Third, to show that this 10% amount was a part of the contract. This, however, cannot be permitted.

"[O]ral agreements or representations cannot be proved or relied upon if they contradict a positive provision of the written contract." *Mario's Pizzeria, Inc. v. Federal Sign & Signal Corp.*, 379 S.W.2d 736, 739 (Ky. 1964); *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 640–41 (Ky. Ct. App. 2003) ("[A]s a matter of law, a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing."); *see also PNC Bank, Nat'l Ass'n v. Seminary Woods, LLC*, 2015 WL 4068380, *16 (W.D. Ky. July 2, 2015). The only provision in the contract addressing an amount to be withheld by Fifth Third provides that the "Lender may at all times withhold disbursements sufficient in its opinion to complete the Project." (DE 1-1 at 11 § 3.B.i.; *see also id.* at 3.B.ii. ("Lender may require that it be satisfied that sufficient mortgage proceeds are held back at all times to assure completion of the project. . . .")). No specific percentage is provided for. Here, the written loan contract—in the express, clear discussion of the procedures for the disbursement of loan proceeds—contains no reference to any 10% amount. Rather, the loan contract provides a flexible method of computing amounts to be withheld subject to Fifth Third's discretion. As such, Sparks' may not rely on any contradictory oral representations of Brandenburg. *Mario's Pizzeria, Inc.*, 379 S.W.2d at 739.

"In the absence of ambiguity a written instrument will be strictly enforced according to its terms." *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky. Ct. App. 2009) (quoting *Mounts v. Roberts*, 388 S.W.2d 117, 119 (Ky. 1965)). The loan contract provides that "except

6

for the final draw," Fifth Third was to make payments directly to Parker. (DE 1-1 at 16). Fifth Third adhered to this provision, withholding 3.5% of the loan proceeds for the final draw, as is acknowledged by Sparks. (DE 23 at 6). Whether Sparks is satisfied with this result or not, Fifth Third did withhold some $23,500.00 ($671,920.00 x .035) for his final approval. This, and nothing more, was required by the loan contract. (*See* DE 1-1 at 11–12 § 3.B.iii.D., 16 Ex. A).

This result is further bolstered by the loan contract's merger clause, which provides that the written loan contract, "the Note, and Mortgage represent the complete agreement of the parties hereto and supersedes all previous understandings and agreements relating to the subject matter hereof." (DE 1-1 at 14). "It is presumed that the written agreement is final and complete and that all prior negotiations between the parties have either been abandoned or incorporated into the final written instrument." *Tuttle*, 292 S.W.3d at 322 (citing *Childers v. Lucas*, 192 S.W.2d 714 (1946)). Here, there is no express or implied term anywhere in the language of the loan contract that indicates Fifth Third had any duty to withhold 10% of the loan proceeds for the final draw. As such, it is implausible that Sparks could allege a breach of such a term. "[W]e are not permitted to create an ambiguity where none exists even if doing so would result in a more palatable outcome." *Id.* (citing *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 836 (Ky. Ct. App. 2000)).

### iii. Confidential Relationship and Fiduciary Duty

Sparks has not and cannot state a plausible ground for relief based on Fifth Third's alleged breach of fiduciary duty. (DE 23 at 2). Under Kentucky law,

> [B]anks do not generally have fiduciary relationships with their debtors. This flows from the nature of the creditor-debtor relationship. As a matter of business, banks seek to maximize their earnings by charging interest rates or fees as high as the market will allow. Banks seek as much security for their loans as they can obtain. In contrast, debtors hope to pay the lowest possible interest rate and fee charges and give as little security as possible. Without a

7

> great deal more, a mere confidence that a bank will act fairly does not create a fiduciary relationship obligating the bank to act in the borrower's interest ahead of its own interest. . . .
>
> Kentucky courts have twice imposed a fiduciary duty in the relationship between a bank and a borrower. On both occasions, the bank profited at the borrower's expense from confidential information received from the borrower.

*de Jong v. Leitchfiled Deposit Bank*, 254 S.W.3d 817, 822 (Ky. Ct. App. 2007) (quoting *Sallee v. Fort Knox Nat'l Bank*, N.A., 286 F.3d 878, 893 (6th Cir. 2002)). Here, Sparks alleges that he and Fifth Third had a confidential relationship because Sparks authorized Fifth Third to make disbursements directly to Parker. (DE 23 at 8). This conclusion is not supported by Kentucky law or the loan contract.

The Court is aware of only two published Kentucky cases where a fiduciary duty was found to be owed by a bank to its customer. *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 4 (Ky. Ct. App. 2012) (citing *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) and *Henkin, Inc. v. Berea Bank and Trust Co.*, 566 S.W.2d 420 (Ky. Ct. App. 1978)); *see also In re Sallee*, 286 F.3d at 893. In both of those cases, the banks gained confidential business information from their customers, and the banks then used that information to damage the business prospects of those customers. *Snow Pallet, Inc.*, 367 S.W.3d at 4. Here, by contrast, Fifth Third merely executed the loan contract in the manner provided by the language negotiated at arm's length between Fifth Third and Sparks. This is insufficient to create or violate a fiduciary duty. *de Jong v. Leitchfiled Deposit Bank*, 254 S.W.3d 817, 822 (Ky. Ct. App. 2007) ("[A] mere confidence that a bank will act fairly does not create a fiduciary relationship obligating the bank to act in the borrower's interest ahead of its own interest."); *In re Sallee*, 286 F.3d at 894. As such, and for all of the above reasons, Sparks' has failed to state a plausible breach of contract claim. Accordingly, Sparks' breach of contract claim is dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## B. Indemnity

Sparks also seeks indemnification from Fifth Third in the amount of his payments to lienholders and for his attorneys' fees and costs incurred during the resolution of those liens. (DE 1-1 at 8–9). Sparks does not specify whether this claim is filed in contract or tort. *Id.* It is clear, however, that the plain language of the contract provides that Sparks shall indemnify Fifth Third, not the other way around. (DE 1-1 at 12 § 5 ("Lender assumes no responsibility or liability for Borrower's potential inspection and lien rights, obligations or liabilities. Borrower agrees to hold harmless and indemnify Lender for any expenses, losses, attorneys' fees, or other costs relating to the matters set forth herein.")). The loan contract also specifically provides that Sparks is to bear his own costs in resolving liens on the property, should they arise. *Id.* ("Borrower is responsible for all obligations relating to lien rights, including but not limited to contractor, subcontractor, and/or materialmen's liens."). Sparks cannot state a plausible ground for relief based on these contractual terms. The loan contract is clear and shall be fully enforced by the Court. *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky. Ct. App. 2009).

Here, Sparks has not stated supportable grounds on which to void the indemnification provisions of the loan contract. Sparks characterizes these provisions as exculpatory clauses, and states that the provisions should not be enforced due to the unequal bargaining power between Sparks and Fifth Third. (DE 23 at 9–12). Despite Sparks' misfortune in trusting his building contractor, the law he cites does not support a finding of the sort of inequality of bargaining power required to void the indemnification provisions. Sparks qualified for a $671,920.00 residential construction loan. This implies some level of sophistication on his part. Further, under Kentucky law, courts have "traditionally enforced

exculpatory provisions unless such enforcement violates public policy." *Cumberland Valley Constr., Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 650–53 (Ky. 2007). Cases where so-called exculpatory clauses are voided typically involve contracts of adhesion where one party is required to sign away their right to a personal injury claim or public safety interest. *Hargis v. Baize*, 168 S.W.3d 36, 47–48 (Ky. 2005). Here, however, the indemnification provisions appear in a mortgage contract for a $671,920.00 residential construction loan and apply to liability related to liens on real property. (DE 1-1 at 12 § 5). This indemnification provision is clearly reasonable, as it is specific in the in the hazard of liens and in the nature of the liability avoided by the provision. *See Hargis*, 168 S.W.3d at 47. Given the clear language of the contract and nature of the transaction, it would be impossible for Sparks to demonstrate that the indemnification provisions should be avoided.

Sparks' claim is also implausible to the extent he seeks to rely on the common law for his indemnification claim. Sparks has not explicitly alleged a tortious theory of relief against Fifth Third. (DE 1-1). Nonetheless, insofar as his complaint can be read to imply a common-law theory for indemnification, the right to indemnity would be based on principles of equity. *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 224 S.W.2d 165, 168 (Ky. 1949); *see also Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000) ("The primary Kentucky precedent on [indemnity] remains *Brown Hotel Co.*"). The Court, however, "should not resort to equitable remedies when adequate legal remedies are available." *Bolen v. Bolen*, 169 S.W.3d 59, 65 n.14 (Ky. Ct. App. 2005). Here, the loan contract specifically provides that Sparks has a duty to indemnify Fifth Third. Fifth Third has no duty to indemnify Sparks. As such, because Sparks indemnification claim is inconsistent with the loan contract and Kentucky law, Sparks indemnification claim is implausible. It must be

dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV. CONCLUSION

The Court is sympathetic to the plight of Sparks in the troubled construction of his residence. This is, however, a problem Fifth Third did not create and for which Fifth Third is not responsible. Construing Sparks' complaint in the light most favorable to him, and accepting all of Sparks' factual allegations as true, it remains implausible that Sparks could allege any valid ground for the relief he seeks. *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). Fifth Third—though it may have behaved incautiously—complied with the explicit terms of the agreement negotiated with Sparks. Accordingly,

**IT IS ORDERED** as follows:

**(1)** Defendant Fifth Third Bank's motion for judgment on the pleadings, (DE 16), is **GRANTED**; and

**(2) ALL CLAIMS** against Defendant Fifth Third Bank are D**ISMISSED WITH PREJUDICE**.

Separate judgment to issue.

Dated December 6, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY