# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

| | |
|---|---|
| LUNDY L. SPARKS,<br>    Plaintiff,<br><br>V.<br><br>FIFTH THIRD MORTGAGE COMPANY,<br>    Defendant. | CIVIL ACTION NO. 5:17-450-KKC<br><br><u>OPINION AND ORDER</u> |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Plaintiff's Motion to Alter, Amend, or Vacate (DE 52), which seeks to vacate a judgment entered by this Court. (DE 52 at 1.) For the reasons stated below, the Motion (DE 52) is **DENIED**.

## I. BACKGROUND

This case stems from a dispute over a residential construction loan. In 2006, Lundy Sparks contracted with B.A. Parker Custom Homes, LLC, ("Parker") to build a residence. Contemporaneously, Sparks contracted with Fifth Third Bank ("Fifth Third") to provide him with a $671,920.00 construction loan for the property. (DE 1-1 at 4.) In the loan contract, Sparks authorized Fifth Third to disburse payments directly to Parker without Sparks first inspecting his new residence to ensure construction had progresses and the funds had been earned. (DE 1-1 at 5.) As the construction project continued, Parker failed to make or withheld payments to independent contractors, who filed liens against the property. Sparks settled those liens in state court to the tune of nearly $200,000. (DE 1-1 at 6.)

Sparks filed suit seeking damages from Fifth Third for its alleged breach of contract. (DE 1-1 at 7.) Sparks alleged that Fifth Third was contractually obligated to ensure that

1

subcontractors had been paid prior to disbursing funds to Parker, and that Sparks should be compensated for his costs in resolving the liens. (DE 1-1 at 7-8.) Sparks also sought indemnification from Fifth Third in the amount that he paid to resolve the liens, plus attorney's fees and costs incurred. (DE 1-1 at 8-9.)

Fifth Third filed a motion for judgement on the pleadings, asserting that the Complaint failed to state a claim for which relief can be granted. (DE 16 at 1.) Fifth Third argued that the plain language of the contract and Kentucky law precluded the relief sought by Sparks. (DE 16-1 at 1-2.) This Court agreed, issued an Opinion and Order granting Fifth Third's motion for judgment on the pleadings ("Opinion and Order"), dismissed the Complaint, and entered judgment in favor of Fifth Third. (*See* DE 50 and 51.)

Sparks has now filed the present Motion to Alter, Amend, or Vacate the judgment under Fed. R. Civ. P. 59(e). (DE 52 at 1.) He asks this Court to vacate the judgment and allow the case to proceed. His Motion asserts the following: (1) that Fifth Third had a duty to pay off any liens filed by subcontractors and that the Court erred in not finding that the Loan Agreement required Fifth Third to hold back a retainage sufficient to pay off such liens; (2) that the Loan Agreement required Fifth Third to ensure that subcontractors had been paid and that no liens were placed on the property; (3) that the Court erred in finding that there was no fiduciary relationship between Sparks and Fifth Third; and (4) that the Court erred in not invalidating the Loan Agreement's indemnity provision because it amounts to an unconscionable exculpatory clause. (DE 52 at 1-2.) The Court considers Sparks' arguments below.

## II. ANALYSIS

Sparks brings his Motion under Fed. R. Civ. P. 59(e), which addresses motions to alter or amend a judgment. (*See* DE 52 at 1.) Sparks does not address Fed. R. Civ. P. 60(b), which addresses grounds for relief from a final judgment, order, or proceeding. Sparks' Motion and

Fifth Third's response clearly address the standard under Fed. R. Civ. P. 59(e) and not the standard under Fed. R. Civ. P. 60(b). Because motions to reconsider are generally evaluated under the same standards applicable to a civil motion to alter or amend a judgment under Fed. R. Civ. P. 59(e), the Court construes Sparks' Motion as a motion to reconsider. *See United States v. Reynolds*, No. 3:08-CR-143, 2018 WL 1950433, at *1 (E.D. Tenn. Apr. 24, 2018).

Motions to reconsider are only granted if there was (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). A motion to reconsider "is not an opportunity to re-argue a case," and it "cannot be used to present new arguments that could have been raised prior to judgment." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). When a motion to reconsider is based exclusively on legal arguments or evidence that could have been raised prior to the original entry of judgement, it should be denied. *See Bingham v. Insight Commc'ns Midwest, LLC,* No. CIV.A. 12-113-DLB, 2012 WL 5392635, at *1 (E.D. Ky. Nov. 5, 2012). Motions to reconsider "must either clearly establish a manifest error of law or must present newly discovered evidence." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007).

Sparks does not explicitly clarify on which ground he bases his Motion, but he does state that the "Motion [was] filed to prevent manifest error by the Court." (DE 56 at 1.) The Court assumes that Sparks' is arguing that the Court erred in applying the law.

A "manifest error" is the "wholesale disregard, misapplication, or failure to recognize controlling precedent on the part of the court." *Dorger v. Allstate Ins. Co.*, No. CIV.A. 2:08-56-DCR, 2009 WL 2136268, at *2 (E.D. Ky. July 16, 2009) (citing *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). The movant must establish that the Court's error was "so egregious that an appellate court could not affirm the judgment." *Id.* at 2.

**A. Sparks' Motion argues—for the first time—that the Loan Agreement required Fifth Third to pay off liens filed by subcontractors and hold back a retainage sufficient to pay off all subcontractors' liens.**

Sparks' arguments that the Loan Agreement required Fifth Third to pay off all liens filed by subcontractors and hold back a retainage sufficient to pay off all subcontractors' liens are not procedurally proper under Fed. R. Civ. P. 59(e) because the arguments—which could have been raised—were not raised prior to the entry of judgment. In the present Motion, Sparks asserts that the Loan Agreement ¶ 3.B.(iii)(C) requires that "Fifth Third retain sufficient funds to pay off all mechanics' liens and other expenses related to the Project." (DE 52 at 3.) Sparks further asserts that "such a mandate requires that the Bank know what the claims, charges, liens and encumbrances were, so that it would know to retain sufficient funds to pay them." (DE 52 at 4.) These arguments are blatantly absent from the Complaint and all other pleadings filed by Sparks. In fact, Sparks' Complaint and response to Fifth Third's motion for judgment on the pleadings do not cite or otherwise reference ¶ 3.B.(iii)(C) of the Loan Agreement at all.

Sparks' Complaint lists a breach of contract claim in which he states precisely how the contract was allegedly breached. The Complaint provides, in relevant part:

> 24. By allowing Mr. Sparks to choose an option on Exhibit A that did not require him to personally approve each draw request, Fifth Third contractually assumed the duty of doing everything that Mr. Sparks was required to do under the Agreement, including approving each draw request, and in so doing, ensure that the subcontractors who had performed work on the project had been paid, to avoid the filing of mechanics' or materialmen's liens on the property.
>
> 25. Kentucky law, both under the Uniform Commercial Code and under the common law, imputes a duty of good faith and fair dealing in every contract.
>
> 26. Fifth Third had a contractual duty to take all reasonable steps in fulfilling its obligations under the Agreement, including the obligation to ensure that subcontractors had been paid from the draws, so that these subcontractors would not be authorized to file liens against the property.

> 27. *Fifth Third breached its contractual duty to ensure that the subcontractors had been paid, and failed to require lien releases, payment receipts, or other evidences that the subcontractors had been paid.*
>
> 28. Mr. Sparks has been monetarily damaged by the breach of contract of Fifth Third, in that he has been required to pay attorneys' fees and costs to defend himself against mechanics' lien claims, and to settle certain claims by subcontractors asserting liens on the property.
>
> 29. This Court should enter a monetary judgment against Fifth Third, in favor or Mr. Sparks, for his compensatory damages caused by Fifth Third's breaches of contract.

(DE 1-1 at 5-6 (emphasis added).)

The Complaint's general allegations also reference the alleged breach. In relevant part, the general allegations state that "Fifth Third improperly approved one or more draw requests submitted by Parker, by approving them *without ensuring that Parker's subcontractors had been paid*, by failing to require Parker to provide lien releases or other evidence that the subcontractors had been paid the amounts owed to them." (DE 1-1 at 4 (emphasis added).)

Moreover, in his response to Fifth Third's motion for judgment on the pleadings, Sparks states: "the avoidance of…liens is a purpose of the agreement," and "Fifth Third … failed to retain the agreed 10% for the final disbursement thereby precluding any opportunity to cover outstanding subcontractor and supplier obligations." (DE 23 at 8.) Sparks otherwise asserts that there was a breach of fiduciary duties owed by Fifth Third to Sparks based on their "confidential relationship." (DE 23 at 8-9.) Finally, he asserts that the "exculpatory clause in Fifth Third's agreement is not enforceable under Kentucky law." (DE 23 at 9.)

Complaint and response to Fifth Third's motion for judgment on the pleadings ultimately assert four arguments regarding Fifth Third's alleged breach of contract: (1) that Fifth Third breached a fiduciary duty owed to Sparks based on the parties' confidential relationship; (2) that Fifth Third violated the duty of good faith and fair dealing by failing to ensure that subcontractors had been paid and no liens were placed on the property; (3) that Fifth Third

5

breached the terms of the Loan Agreement by failing to retain the agreed 10% for the final disbursement; and (4) that the "exculpatory clause" is unenforceable. (*See* DE 1-1; DE 23.) These arguments are entirely different from Sparks' present arguments that Fifth Third breached the terms of the Loan Agreement by failing to pay off all subcontractor's liens and failing to retain sufficient funds to pay off all subcontractor's liens. Sparks' present argument is not based on new evidence and is a glaring attempt to present new arguments that could have been raised prior to judgment. Accordingly, the Court will not consider Sparks' assertions that the Loan Agreement required Fifth Third to pay off all liens filed by subcontractors and hold back a retainage sufficient to pay off all subcontractors' liens.

    B. **Sparks' Motion to Reconsider reasserts generally that Fifth Third had a duty to ensure that subcontractors had been paid and that no liens were placed on the property.**

Sparks' Motion asserts that the Loan Agreement required Fifth Third to ensure that subcontractors had been paid and that no liens were being placed on the property. (*See* DE 52 at 2-6.) Sparks asserts that two provisions of the Loan Agreement support his argument: ¶ 3.B.(iii)(C); and ¶ 3.B.(ii). Regarding this assertion, Sparks has not established a manifest error of law on behalf of the Court.

In the Court's Opinion and Order, the Court found that the Loan Agreement did not require Fifth Third to ensure that subcontractors had been paid and that no liens were being placed on the property. (DE 50 at 5.) Sparks contends that the Loan Agreement ¶ 3.B.(iii) belies the Court's findings. (DE 52 at 3.)

The Loan Agreement ¶ 3.B.(iii) provides:

Borrower shall be permitted to submit draw requests, which may vary in number depending on the Project and at the discretion of the Lender, but in general the number of draws shall not exceed six. Lender shall disburse the net amount requested, less retainage, and less any combination of the following:

6

> (C) any real estate taxes, mechanics' liens, security interests, claims or other charges against the Project, and any interest, fees or other costs which the Borrower may have failed to pay in accordance with this Agreement the Note or the Mortgage…

(DE 1-1 at 11.)

As the Court noted above, this is the first time Sparks has relied on ¶ 3.B.(iii)(C) in supporting any of his arguments. As such, the Court considers it a new argument, which is not procedurally proper on a motion to reconsider. But even disregarding that it is a new argument, the Court disagrees that ¶ 3.B.(iii) places a duty on Fifth Third to ensure that subcontractors had been paid and that no liens were being placed on the property.

The interpretation of a contract is a question of law for the Court. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002) (citing *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)). In interpreting a contract, the Court's purpose "is to effectuate the intentions of the parties" in drafting the agreement. *Id.* In so doing, the Court relies on the plain language of the contract. "Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Id.* at 385 (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)).

The plain language of the Loan Agreement ¶ 3.B.(iii)(C) clearly addresses circumstances where *liens have already been placed* on the property. (DE 1-1 at 11, ¶ 3.B.(iii) ("Lender shall disburse the net amount requested, less retainage, and less … real estate taxes, *mechanics' liens, security interests, claims or other charges* against the Project, and any interest, fees or other costs which the Borrower may have failed to pay in accordance with this Agreement…" (emphasis added)).) Nothing in ¶ 3.B.(iii) places a duty on Fifth Third to ensure that subcontractors have been paid and liens were not being placed on the property. The Court will not construe a provision addressing circumstances where liens have already been placed

7

on the property to state that it creates a duty on behalf of Fifth Third to ensure subcontractors have been paid and prevent liens from being placed on the property.

Sparks further asserts that Fifth Third had a duty to ensure that subcontractors were paid and that no liens were placed on the property because the Loan Agreement required Fifth Third to collect lien waivers. (DE 52 at 5.) To support this assertion, Sparks relies on ¶ 3.B.(ii), which states: "[f]or each disbursement, **Borrower shall** submit a construction draw request on a form acceptable to the Lender, for work completed and materials in place to date thereof by subcontractors, materialman's certificates or releases or waiver of liens, satisfactory to lender." (DE 1-1 at 11 (emphasis added).) Sparks contends that this language "clearly provides for a draw request to be submitted with one of the following three options: materialman's certificate, release, or waiver of liens." (DE 52 at 5.) He further contends that "when Fifth Third did not get lien releases, it failed to follow the loan agreement." (DE 52 at 6.)

But this argument is contrary to basic contract principles. It would generate liability on behalf of a lender every time a borrower failed to fulfill a borrower-specific duty under a loan agreement. The Loan Agreement ¶ 3.B.(ii) plainly addresses the Borrower's duty in submitting a construction draw request, not the Lender's duty. (DE 1-1 at 11, ¶ 3.B.(ii) ("Borrower shall…").) Here, Sparks is the Borrower and Fifth Third is the Lender. Sparks is essentially asserting his own failure to comply with a borrower-requirement of the Loan Agreement effectively generated liability on behalf of the lender, Fifth Third, because Fifth Third did not ensure that Sparks' did not violate this borrower-requirement. Such interpretation is the equivalent of stating that when a loan agreement creates a duty on behalf of one party, it creates a duty on behalf of all other parties to ensure compliance. Accepting such an argument would completely nullify all claims for breach of contract because every time one party breached an agreement, all other parties would be in breach

because they failed to ensure that the contract was not breached in the first instance. As such, the Court rejects this argument because it is contrary to basic contract principles.

As the Court explained in its Opinion and Order, the plain language of the contract contradicts Sparks' assertion that Fifth Third had a duty to ensure that subcontractors were paid and that no liens were placed on the property. (DE 50 at 4-5.) The Loan Agreement explicitly provides:

> If the Borrower has any concern relating to the construction of the Project, Borrower should take any and all actions to satisfy and/or resolve Borrower's concerns, including but not limited to performing Borrower's own inspection or hiring an expert to perform an inspection (or inspections) for the Borrower. Borrower should never authorize Lender to disburse Loan Proceeds to any contractor until Borrower is completely satisfied with the work of such contractor. *Borrower is responsible for all obligations relating to lien rights, including but not limited to contractor, subcontractor, and/or materialmen's liens. Lender assumes no responsibility or liability for Borrower's potential inspection and lien rights, obligation, or liabilities*

(DE 1-1 at 12 (emphasis added).)

Despite the above provision, Sparks chose to authorize Fifth Third "to make all disbursements directly to the part(ies) identified in the draw requests." (DE 1-1 at 16 ("[T]he disbursement check will be made payable to and sent directly to the contractor.").) But this authorization does not require that Fifth Third assume the borrower's duties under the contract. Indeed, there is no provision anywhere in the Loan Agreement addressing the Lender's assumption of Borrower duties. In fact, the Loan Agreement unambiguously provides the opposite: "Lender assumes no responsibility or liability for Borrower's potential inspection and lien rights, obligation, or liabilities." (DE 1-1 at 12.) The Loan Agreement further provides: "Borrower is responsible for all obligations relating to lien rights … including … subcontractor … liens." (DE 1-1 at 12.) "Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002). Here, the Loan Agreement unambiguously provides that Sparks

9

was responsible for all obligations relating to lien rights, obligations, and duties, not Fifth Third. Absent a contrary provision, Fifth Third had no duty to ensure that subcontractors were paid and no liens were placed against Sparks' property.

Moreover, the present Motion is one for reconsideration. Accordingly, Sparks must show that the Court committed a manifest error of law. *See Roger Miller Music*, 477 F.3d at 395. He must show that the Court wholly disregarded, misapplied, or failed to recognize controlling precedent. *See Doreger*, 2009 WL 2136268 at *2. The Court applied the relevant precedent and interpreted the Loan Agreement—which is a question of law for the Court. *See Cantrell Supply*, 94 S.W.3d at 384 (citing *First Commonwealth Bank of Prestonsburg*, 55 S.W.3d at 835). The Court relied on the plain, unambiguous language of the Loan Agreement to determine that Fifth Third did not have a duty to ensure that subcontractors were paid and no liens were placed against Sparks' property. Sparks' Motion does not establish an error in the Court's Opinion and Order that was "so egregious that an appellate court could not affirm the judgment." *See Doreger*, 2009 WL 2136268 at *2. Accordingly, Sparks' motion to reconsider is denied on this basis.

### C. Sparks' Motion asserts that the Court erred in finding that there was no fiduciary relationship between Sparks and Fifth Third.

Sparks next asserts that the Court erred in finding that there was no fiduciary relationship between Sparks and Fifth Third. (DE 52 at 6.) Regarding this assertion, Sparks again does not clearly establish a manifest error of law on behalf of the Court.

First Sparks' Complaint does not allege a specific claim for breach of any fiduciary duty, nor could it because breach-of-fiduciary-duty claims under Kentucky law are subject to a five-year statute of limitations. *Osborn v. Griffin*, 865 F.3d 417, 437 (6th Cir. 2017). Here, the Loan Agreement was entered into in February 2006 and lien related claims were litigated in the Kentucky Court of Appeals in 2008. *See Barber Cabinet Co. v. Sparks*, No. 2008-CA-

001948-MR, 2009 Ky. App. Unpub. LEXIS 1100 (Ky. Ct. App. Dec. 4, 2009). Accordingly, a breach of fiduciary duty claim would be stale by at least five years. But even disregarding the staleness of such claims, Fifth Third and Sparks were not in a fiduciary relationship.

In his Motion to Reconsider, Sparks contends that Fifth Third owed fiduciary duties to Sparks because an agent of Fifth Third, Charlene Brandenburg, advised Sparks to allow Fifth Third bank to manage the disbursement of loan proceeds. (DE 52 at 6.) Sparks further contends that this "solicited" undertaking created a confidential relationship between the parties which required Fifth Third to manage the disbursement of loan proceeds in a reasonable and competent manner. (DE 52 at 6-8.) Sparks relies on *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.* to support his position. 807 S.W.2d 476 (Ky. 1991). *Steelvest* states that a fiduciary relationship:

> involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking…it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.
>
> *Steelvest*, 807 S.W.2d at 485 (citing *Security Trust Co. v. Wilson*, 210 S.W.2d 336, 338 (1948)).

Sparks contends that the above quoted language "describes exactly the type of relationship that not only existed between Mr. Sparks and Fifth Third, but which was specifically solicited by Ms. Brandenburg, an employee and agent for Fifth Third." (DE 52 at 8.)

As the Court previously stated in its Opinion and Order, a bank generally does not have a fiduciary relationship with its borrowers. (DE 50 at 7); *In re Sallee*, 286 F.3d 878, 893 (6th Cir. 2002). In arms-length commercial transactions, where each party is assumed to be protecting its own interests, no fiduciary duties arise. *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5 (Ky. Ct. App. 2012). Additionally, a bank providing advice to a customer in a commercial context does not create a fiduciary relationship. *Guangzhou Consortium*

*Display Prod. Co. v. PNC Bank, Nat. Ass'n*, 956 F. Supp. 2d 769, 781 (E.D. Ky. 2013). "[A] mere confidence that a bank will act fairly does not create a fiduciary relationship obligating the bank to act in the borrower's ahead of its own interest." *De Jong v. Leitchfiled Deposit Bank*, 254 S.W.3d 817, 822 (Ky. Ct. App. 2007) (quoting *In re Salle*, 286 F.3d at 893). Generally, for a fiduciary relationship to arise in the context of mortgage contracts, there must be an express provision creating such relationship. *Forsythe v. BancBoston Mortg. Corp.*, 135 F.3d 1069, 1077 (6th Cir. 1997); *Mills v. Flagstar Bank*, No. CV 6: 17-294-DCR, 2018 WL 1050456, at *5 (E.D. Ky. Feb. 26, 2018). Fiduciary relationships between a bank and a borrower have only been found in cases where the bank profited at the borrower's expense from confidential information received from the borrower. *Snow Pallet*, 367 S.W.3d at 4; (citing *Steelvest*, 807 S.W.2d at 480); *Henkin, Inc. v. Berea Bank and Trust Co.*, 566 S.W.2d 420 (Ky. Ct. App. 1978)); *see also In re Sallee*, 286 F.3d at 893. Sparks has pointed to no authority in which a fiduciary relationship has been found between a bank and borrower in a situation where the bank did not profit off the use of confidential information to the borrower's detriment.

Here, Fifth Third provided a residential construction loan to Sparks following the parties' execution of a mortgage contract. Sparks asserts that Charlene Brandenburg advised him to allow Fifth Third to allow the bank to manage the disbursement of loan proceeds. Specifically, Brandenburg stated that "most customers choose the direct payment option to the builder so the project doesn't experience delay." (DE 1-1 at 5.) Thereafter, Sparks authorized the Lender to, except for the final draw, "make all disbursements directly to the party(ies) identified in the draw request." (DE 1-1 at 16.) Sparks explicitly relies on *Steelvest* to support that Sparks and Fifth Third entered into a fiduciary relationship. (*See* DE 52 at 6-9.)

But *Steelvest* is distinguishable from the present case. In *Steelvest*, the Sixth Circuit emphasized that the key to its holding was that the bank profited at the borrower's expense by misusing the borrower's confidential information. *See Steelvest*, 807 S.W.2d at 486. In addition, *Steelvest's* progeny stand for the same proposition. *See, e.g., In re Sallee*, 286 F.3d at 893; *Snow Pallet*, 367 S.W.3d at 4; *Bank of Am., N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp. 2d 689, 705 (E.D. Ky. 2012); *Guangzhou*, 956 F. Supp. 2d at 781; *Scott v. Forcht Bank, NA*, 521 S.W.3d 591, 597 (Ky. Ct. App. 2017).

Sparks and Fifth Third agree that the Fifth Third did not profit from the arrangement between the parties. (DE 52 at 8; DE 54 at 8.) And Sparks has provided the Court with no other precedent or reasoning to support its contention that there was a fiduciary relationship between the parties. Additionally, the Loan Agreement specifically provides:

> [i]f the Borrower has any concern relating to the construction of the Project, Borrower should take any and all actions to satisfy and/or resolve Borrower's concerns, including but not limited to; performing Borrower's own inspection or hiring an expert to perform an inspection (or inspections) for the Borrower. Borrower should never authorize the Lender to disburse Loan Proceeds to any contractor until Borrower is completely satisfied with the work of such contractor.

(DE 1-1 at 12.)

Despite the above language, Sparks still chose to allow the bank to disburse the loan proceeds directly. Additionally, it is immaterial that Sparks acted on the so-called "advice" of a Fifth-Third employee as advice in a commercial context does not create a fiduciary relationship. *See Guangzhou*, 956 F. Supp. 2d at 781.

Moreover, the present Motion is one for reconsideration. Accordingly, Sparks must establish a manifest error of law by the Court. *See Roger Miller Music,* F.3d at 395. Certainly, it is not a manifest error to follow well-established precedent stating that a fiduciary relationship does not exist between a bank and a borrower except where the bank uses the borrower's confidential information to profit on the borrower's behalf—especially

where Sparks has provides no authority or reasoning contradicting such precedent. The Court finds that Fifth Third simply followed the disbursement procedure negotiated and agreed upon by the parties in their arms-length commercial transaction. Sparks' Motion does not establish an error in the Court's Opinion and Order that was "so egregious that an appellate court could not affirm the judgment." *See Doreger*, 2009 WL 2136268 at *2. Accordingly, there was no fiduciary relationship between the parties, and Sparks' Motion to Reconsider is denied on this ground.

> **D. Sparks' Motion asserts that the Court erred in not invalidating the Loan Agreement's indemnity provision because it amounts to an unconscionable exculpatory clause.**

Sparks' Motion to Reconsider reasserts that the indemnity provision in the Loan Agreement amounts to an unconscionable exculpatory cause. (DE 52 at 1-2.) Again, Sparks fails to establish a manifest error of law on behalf of the Court.

In his complaint, Sparks listed a claim for "indemnification." As the Court stated in its Opinion and Order, Sparks does not specify—and the Court still does not know—whether he brings his claim under a tort or contract theory of liability. (DE 50 at 9.) The Court presumes that Sparks' claim for indemnification is based on a breach of contract because the only other claim brought by Sparks is one for breach of contract. (*See* DE 1-1.) However, the Court will again address both theories of liability.

Sparks' present Motion asserts that there was a clear disparity in bargaining power between Sparks and Fifth Third and that Fifth Third "used that bargaining power to induce Mr. Sparks to sign a contract of adhesion that was presented to him as fait accompli." (DE 52 at 11.) He further asserts that the Loan Agreement "contained an exculpatory clause made unenforceable by application of the *Cumberland Valley* and *Speedway* cases." (DE 52 at 11.) The Court disagrees.

14

As the Court stated in its Opinion and Order, the plain language of the Loan Agreement provides that Sparks shall indemnify Fifth Third, not the other way around. (DE 50 at 9.) The Loan Agreement specifically provides: "Lender assumes no responsibility or liability for Borrower's potential inspection and lien rights, obligations or liabilities. Borrower agrees to hold harmless and indemnify Lender for any expenses, losses, attorneys' fees, or other costs relating to the matters set forth herein." (DE 1-1 at 12.) The Loan Agreement further provides that the "Borrower is responsible for all obligations relating to lien rights, including but not limited to contractor, subcontractor, and/or materialmen's liens." (DE 1-1 at 12.) Sparks characterizes these provisions as "unconscionable exculpatory clauses" that should not be enforced due to unequal bargaining power between the parties. (DE 52 at 10.)

Where a loan contract is clear, it shall be enforced according to its terms. *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky. Ct. App. 2009). Kentucky Courts have "traditionally enforced exculpatory provisions unless such enforcement violates public policy." *Cumberland Valley Constr., Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644, 650–53 (Ky. 2007). Cases where exculpatory clauses are voided typically involve contracts of adhesion where one party is required to sign away their right to a personal injury claim or public safety interest. *Hargis v. Baize*, 168 S.W.3d 36, 47–48 (Ky. 2005). Exculpatory clauses must be clear and understandable such that an ordinarily prudent and knowledgeable party will know what he is contracting away. *Id.* at 47.

Sparks relies on two cases to support that the subject-indemnity provision is an unconscionable, unenforceable exculpatory clause—*Cumberland Valley Constr., Inc. v. Bell Cty. Coal Corp.* and *Speedway Superamerica, LLC v. Erwin*, 250 S.W.3d 339 (Ky. Ct. App. 2008). (DE 52 at 11.) Specifically, Sparks asserts that "Kentucky law … does not limit the circumstances in which an agreement of adhesion is deemed to be unconscionable because of the disparity in bargaining ability between the parties." (DE 52 at 10.) He further argues

15

that there is significant disparity in bargaining power between Sparks and Fifth Third. (DE 52 at 10-11.)

As the Court previously stated in its Opinion and Order, despite Sparks' misfortune, the law he cites does not support a finding of the sort of inequality of bargaining power required to void the indemnification provisions. (DE 50 at 9.) In *Cumberland*, the Court recognized the importance of freedom of contract and stated that exculpatory clauses should be generally be enforced unless they violate public policy. 238 S.W.3d at 650. In deciding whether to uphold such provisions, the Court must consider whether the parties entered the contract voluntarily without either party being compelled to enter the contract based on necessity. *Id*. Further, the Court should consider whether the parties dealt with each other at arm's-length and upon an equal footing. *Id*.

In *Speedway*, the Kentucky Court of Appeals set aside an exculpatory provision in an employment contract. 250 S.W.3d at 339. Erwin, a general contractor working for an owner of a convenience store chain, brought suit against the owner after suffering an injury while loading a freezer into a truck at one of the owner's stores. *Id*. at 340-41. The owner filed a counterclaim against Erwin seeking enforcement of an indemnity provision in a contract between the two parties. *Id*. at 341. The indemnity provision provided in the employment contract was essentially a blanket waiver of all liability on behalf of Speedway. *See id*. at 340. The Court considered the specific facts of the case and found there was a significant disparity in bargaining power that existed between the two parties. *Id*. at 342. Among other things, the Court specifically considered that Erwin had only an eighth-grade education and other than the gross compensation for work, the contract did not otherwise benefit Erwin in any way. *Id*. Speedway had the ability to cancel the contract at any time and for any reason. *Id*. Under the parties' contract, Erwin was subject to a personal injury release in a largely

16

illusory contract. *Id*. at 340-43. As such, the Court held that the exculpatory provision was against public policy. *Id*. at 344.

Such disparity in bargaining power is simply not present here. Additionally, the provision in Sparks' mortgage contract is not a blanket waiver of liability. Instead, the indemnity provision is narrowly tailored and specifically addresses lien rights, obligations, and liabilities. (*See* DE 1-1 at 12.) As the Court stated in its Opinion and Order, the fact that Sparks qualified for a $671,920.00 residential construction loan implies at least some level of sophistication on his part. (DE 50 at 9.) Sparks asserts that his sophistication in qualifying for a significant loan should be contrasted with the strength of Fifth Third and the breadth of its assets. (DE 52 at 10-11.) While that is true, the Court does not find the sort of inequality of bargaining power required to void the indemnification provisions in this instance. The indemnification provision is clear, reasonable, and specific in the hazard of liens and nature of liability avoided by the provision. *See Hargis*, 168 S.W.3d at 47. The provision, in relevant part, provides: "Lender assumes no responsibility or liability for Borrower's potential…lien rights, obligations, or liabilities. Borrower agrees to hold harmless and indemnify Lender for any expenses, losses, attorneys' fees, or other costs relating to the matters set forth herein." (DE 1-1 at 12.) The same section further provides "Borrower is responsible for all obligations relating to lien rights, including but not limited to contractor, subcontractor, and/or materialmen's liens." (DE 1-1 at 12.) This provision—as it relates to lien rights, obligations, and liabilities—is clear and understandable such that an ordinarily prudent and knowledgeable party would know that he is responsible for lien-related rights, obligations, and liabilities. Additionally, the indemnification provision does not violate—and Sparks does not explicitly assert that it violates—public-safety or public-policy interests. Based on the foregoing, it would be impossible for Sparks to demonstrate that the indemnification provisions should be avoided.

To the extent Sparks' Complaint can be read to imply a tortious theory of relief against Fifth Third, the right to indemnity would be based on principles of equity. *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 224 S.W.2d 165, 168 (Ky. 1949); *see also Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000) ("The primary Kentucky precedent on [indemnity] remains *Brown Hotel Co.*"). However, the Court "should not resort to equitable remedies when adequate legal remedies are available." *Bolen v. Bolen*, 169 S.W.3d 59, 65 n.14 (Ky. Ct. App. 2005). Here, the loan contract specifically provides that Sparks has a duty to indemnify Fifth Third. (DE 1-1 at 12.) Fifth Third has no duty to indemnify Sparks. As such, because Sparks' indemnification claim is inconsistent with the loan contract and Kentucky law, Sparks' indemnification claim is implausible and was properly dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Moreover, Sparks' present Motion is one for reconsideration. Accordingly, Sparks must establish a manifest error of law by the Court. *See Roger Miller Music,* F.3d at 395. He must show that the Court wholly disregarded, misapplied, or failed to recognize controlling precedent. *See Doreger*, 2009 WL 2136268 at *2. The Court applied the relevant precedent and determined that it supports the enforcement of the indemnity provision. Here, there is not the type of disparity in bargaining power warranting an invalidation of the indemnification provision agreed to by the parties, and Sparks has not presented any law or facts which persuade this Court to invalidate the provision. The precedent cited and subsequent application by the Court support the enforceability of the indemnification provision contained in the Loan Agreement, as negotiated in an arm's-length commercial transaction by the parties. Sparks' Motion does not establish an error in the Court's Opinion and Order that was "so egregious that an appellate court could not affirm the judgment." *See*

*Doreger*, 2009 WL 2136268 at *2. Accordingly, Sparks' Motion to Reconsider is denied on this basis.

### III. CONCLUSION

As the Court stated in its Opinion and Order granting Fifth Third's motion for judgment on the pleadings, Fifth Third did not create and is not responsible for Sparks' lien-related issues. (DE 50 at 11.) In construing the Complaint in the light most favorable to Sparks and accepting all of his factual allegations as true, it remains implausible that Sparks could allege any valid ground for the relief he seeks. *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). Fifth Third complied with the explicit terms of the agreement negotiated with Sparks.

Regarding Sparks' present Motion for Reconsideration, Sparks has not established that the Court committed a manifest error of law in its Opinion and Order. Sparks has not shown that the Court wholly disregarded, misapplied, or failed to recognize controlling precedent. *See Doreger*, 2009 WL 2136268 at *2. Further, Sparks has not shown that the Court committed an error that was "so egregious that an appellate court could not affirm the judgment." *Id*. As such, his Motion to Alter, Amend, or Vacate construed as a Motion to Reconsider (DE 52) must be denied. *See Intera Corp. v. Henderson*, 428 F.3d at 620.

Based on the foregoing, the Court **HEREBY ORDERS** that the Plaintiff's Motion to Alter, Amend, or Vacate (DE 52) is **DENIED**.

Dated July 22, 2019.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

19